1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN M. NIETO,                          Case No. 1:20-cv-00291-JLT-CDB (PC)
                              Plaintiff,
12                                           FINDINGS AND RECOMMENDATIONS
           v.                                TO GRANT DEFENDANTS' MOTION
13                                           FOR SUMMARY JUDGMENT
     WARDEN GORDON, et al.,
14                                           (Doc. 47)
                              Defendants.
15                                           **FOURTEEN (14) DAY DEADLINE**

16

17         Plaintiff John M. Nieto, a state prisoner proceeding *pro se* and *in forma pauperis*, filed

18   this civil rights action under 42 U.S.C. § 1983. Defendants York, Diaz-Navarro, Marchese,

19   James, Gonzalez, Rivero, Vera, Baeza, and Vargas have filed a motion for summary judgment

20   (Doc. 52), to which Plaintiff filed no opposition despite two orders of the Court directing

21   Plaintiff to file a response (Docs. 56, 60. For the following reasons, the Court recommends that

22   summary judgment be granted in Defendants' favor.

23   **I.     PROCEDURAL HISTORY**

24         This matter proceeds on Plaintiff's first amended complaint ("FAC") on the following

25   claims: (1) an Eighth Amendment excessive force claim against Correctional Officers ("COs")

26   York, Diaz-Navarro, Marchese, James, Gonzalez, Rivero, Rodriguez, Vera, Analis,[1] and Baeza;

27

28   _____

           [1] Rodriguez and Analis were not served. (Doc. 42.)

1    (2) an Eighth Amendment failure to protect claim against COs Vargas and Reyes[2]; and (3) an

2    Eighth Amendment medical indifference claim against James. (Docs. 12, 15, 17.)

3         On June 8, 2022, Defendants filed a motion for summary judgment ("MSJ") arguing that

4    Plaintiff failed to exhaust administrative remedies; there are no genuine issues of material fact

5    and they are entitled to judgment as a matter of law; the excessive force and failure to protect

6    claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and Defendants are entitled to

7    qualified immunity. (Doc. 52.) Defendants provided the appropriate warning under *Rand v.*

8    *Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc), advising Plaintiff of the requirements

9    of Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260. (Doc. 52-22.).

10        On July 21, 2022, the Court ordered Plaintiff to respond to the MSJ within 30 days with

11   the filing of an opposition or statement of non-opposition.  (Doc. 56.)  Instead, on August 11,

12   2022, Plaintiff filed a document titled, "TO RESPONSE ON (GSA) MAGISTRATE JUDGE

13   ALSO TO WHOM THE COURT CONCERNS." (Doc. 59.) The pleading is incomprehensible.

14   Construing the pleading liberally, Plaintiff indicates that he filed a 602 complaint and exhausted

15   administrative remedies. (*Id.* at 1.) He alleges his legal mail was intentionally trashed or lost, and

16   files on his computer, including his medical files that recorded years of abuse, were "erazed

17   [*sic*]." (*Id.* at 2.) Plaintiff also appears to allege that he was involuntarily injected with vaccines.

18   (*Id.*)

19        The Court did not construe Plaintiff's filing as a response to the MSJ. On August 18,

20   2022, the Court entered a second order directing Plaintiff to file, within thirty days, a response in

21   opposition or a notice of non-opposition to the MSJ in accordance with Local Rule 260(b). (Doc.

22   60.) The Court advised: "If Plaintiff fails to comply, the Court will issue findings and

23   recommendations determining the motion without further notice to or input from Plaintiff." (*Id.*

24   at 2.) After Plaintiff failed to file a response as ordered, on September 19, 2022, Defendants filed

25   a notice of Plaintiff's failure to oppose their motion for summary judgment. (Doc. 61.)

26        Thereafter, Plaintiff filed three notices of change of address. (Docs. 62, 64, 65.) None of

27   the Court's filings were returned as undeliverable. Accordingly, the Court presumes that Plaintiff

28

---

[2] Reyes was served on June 24, 2021, but he did not file a response to the complaint. (Doc. 38.)

received Defendants' MSJ and orders directing him to respond to the motion, and Plaintiff has elected not to oppose entry of summary judgment in Defendants' favor.

## I.      LEGAL STANDARDS

### A.      Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may accomplish this by presenting evidence that negates an essential element of the non-moving party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element of his claim that must be proven at trial. *Id.*; Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

If the moving party meets this initial showing, the burden shifts to the non-moving party to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when deciding a motion for summary judgment, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Id.*

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Id*. Plaintiff's

1   verified complaint may serve as an affidavit in opposition to summary judgment if based on

2   personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122,

3   1132 n.14 (9th Cir. 2000) (en banc).

4   **B.  Exhaustion of Administrative Remedies**

5   The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

6   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

7   prisoner confined in any jail, prison, or other correctional facility until such administrative

8   remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative

9   remedies is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549

10  U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in

11  accordance with the applicable procedural rules, including deadlines, as a precondition to

12  bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion

13  requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532

14  (2002), regardless of the relief sought by the prisoner or offered by the administrative process,

15  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

16  The PLRA requires "proper exhaustion," which means that "the prisoner must complete

17  the administrative review process in accordance with the applicable procedural rules, including

18  deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93. The

19  rules that must be followed, in other words, "are defined not by the PLRA, but by the prison

20  grievance process itself." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to

21  comply with the grievance procedures will vary from system to system . . . , but it is the prison's

22  requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* The

23  exhaustion requirement allows prison officials to have an opportunity to resolve disputes before

24  the filing of a court action against them. *Id.* at 204.

25  The failure to exhaust administrative remedies is an affirmative defense that the

26  defendant must plead and prove. *Id.* at 204, 216. The defendant bears the burden of producing

27  evidence that proves a failure to exhaust; summary judgment is appropriate only if the

28  undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed

to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant bears the initial burden of proving (1) the existence of an available administrative remedy, and (2) the plaintiff failed to exhaust that remedy. *Id.* at 1172. If the defendant makes this showing, the burden shifts to the prisoner to present evidence showing "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). A prisoner may not file a complaint raising non-exhausted claims. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

The ultimate burden of proof, however, remains with the defendant. *Albino*, 747 F.3d at 1172. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Id.* at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id.* at 1131.

**C.  CDCR Grievance Process**

Plaintiff does not dispute that Defendants have met their initial burden of showing that an available administrative remedy exists. The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff having an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2017). [3] Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to utilize CDCR's grievance process to exhaust their claims prior to filing a lawsuit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 8586.

From 2018 to 2020, the years relevant to Plaintiff's claims, California regulations required that inmates pursue administrative grievances through three levels of review in order to exhaust their administrative remedies. Cal. Code Regs. tit. 15, §§ 3084.1(b) (2018), 3084.7(d)(3) (2018) (repealed June 1, 2020). To exhaust properly, the prisoner must submit to the appeals

---

[3] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of these findings and recommendations, all citations refer to the version of the regulations effective at times relevant to Plaintiff's claims.

coordinator a CDCR form 602 ("602"), inmate appeal, describing the specific issue under appeal and the relief requested, and supporting documents. Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.3. The first appeal is screened for routine processing. *Id.* §§ 3084.4(b)(1). Appeals alleging staff misconduct constitute an exception to the regular appeal process. *Id.* § 3084.9(i). If an appeal is accepted as a staff complaint, the first level of review is bypassed. *Id.* § 3084.7(a)(3). If the prisoner is dissatisfied with the departmental response, then he may seek a second level of administrative review. *Id.* § 3084.7(b). If the matter is not resolved at the second level, then he may seek a third level of review. *Id.* § 3084.7(c). "The third level of review exhausts administrative remedies." *Id.* § 3084.7(d)(3).

## II.     UNDERLYING FACTS

### A.     Introduction

In accordance with Local Rule 260(a), Defendants submitted a statement of undisputed facts in support of their MSJ. (Doc. 52-2.) Plaintiff failed to file a response in opposition to Defendants' motion; reproduce Defendants' statement of undisputed facts ("SUF") and deny those that are disputed; or file a statement of disputed facts. *See* L.R. 260(b); *see also* Fed. R. Civ. P. 56(c). Because Plaintiff failed to address Defendants' assertions of fact properly, the Court considers the Defendant's version of the facts undisputed. *See* Fed. R. Civ. P. 56(e)(3). The following summary of facts are derived from Defendants' statement of disputed facts, which are supported by declarations of witnesses.[4]

### B.     Statement of Undisputed Facts

On the date of the incident at issue, January 29, 2018, Plaintiff was incarcerated at California State Prison-Corcoran ("Corcoran"). On November 16, 2018, Plaintiff was transferred to California State Prison-Sacramento ("Sacramento"), where he is currently housed.

On January 29, 2018, York was providing coverage outside of the 3B Clinic when Plaintiff suddenly and without warning approached York and began punching him. York used his arms to protect his face, then York grabbed Plaintiff's shoulders and pushed Plaintiff away from

---

[4] For simplicity's sake, the Court will cite to the relevant paragraphs of the SUF, without reference to the supporting declarations.

1   him, causing Plaintiff to strike a fence. Plaintiff returned and ran toward York, who kicked

2   Plaintiff away. When Plaintiff returned and continued to strike York, Yorker grabbed Plaintiff

3   and forced him toward the clinic door. Other staff arrived to assist.

4   York was bleeding from his neck and was transported to the Correctional Treatment

5   Center ("CTC") for treatment. Given the severity of his injuries, Plaintiff was then transported to

6   Adventist Medical Center in Hanford, California. Plaintiff had stabbed York in the neck, chin,

7   and right hand with an "inmate manufactured weapon."[5] York also sustained injury to the left knee.

8   COs Navarro-Diaz witnessed the attack on York and ordered Plaintiff to get down.

9   Navarro-Diaz used a baton to strike Plaintiff twice in the thigh. Plaintiff then attacked Navarro-

10  Diaz by punching him on both sides of the head. After Navarro-Diaz fell to the ground, he was

11  transported to CTC for further medical evaluation. Medical staff at CTC determined that he

12  required further medical treatment from an outside hospital, and Navarro-Diaz was also

13  transported to Adventist Medical Center.

14  CO Baeza also responded and was able to force Plaintiff to the ground, but Plaintiff

15  resisted and struck Baeza in the chest and ribs with his elbow. CO DaLuz deployed a burst of

16  pepper spray, and Baeza gained control of Plaintiff's upper body. Baeza did not receive

17  immediate medical attention, but he later went to an outside hospital for treatment. He suffered

18  fractured ribs from Plaintiff's assault, and he required seven months of physical therapy.

19  Lieutenant Gonzalez responded to the scene and witnessed Plaintiff's attack on Navarro-

20  Diaz and the pepper spray blast. When Plaintiff fell to the floor, Gonzalez was able to force

21  Plaintiff's legs together and maintain control of him. CO Marchese arrived at the scene and

22  placed a spit mask over Plaintiff's head and applied restraints on Plaintiff's ankles without

23  incident. COs Vera and Tapia escorted Plaintiff to the gym and placed him in the holding cell,

24  also without incident.

25  CO Vargas and Licensed Vocational Nurse James were not involved in the incident.

26  Lieutenant Rivero, the Incident Commander, ensured that injured staff were treated and

27  _____

28  [5] There were two inmate manufactured weapons recovered from the scene. They each consisted of two metal rods, four to five inches in length, sharpened to a point and held together with rubber bands at the unsharpened end to form a handle. (Doc. 52-16 at 2, 10.)

1   decontaminated. He went to the holding cell to follow up on Plaintiff. Rivero reviewed Plaintiff's

2   medical evaluation, which noted Plaintiff had no serious bodily injury and had been

3   decontaminated with a fan. Rivero was not involved in the incident.

4       Plaintiff was subdued, placed in a holding cell, and decontaminated for exposure to

5   pepper spray. He then was medically evaluated by Medical Technical Assistant Shew, who noted

6   Plaintiff was decontaminated from his exposure to pepper spray and had an active nosebleed and

7   abrasions/scratches to the top of the head and both knees. A few days later, Plaintiff complained

8   of rib pain, and chest x-rays revealed that he had fractured two ribs from the incident.

9       On January 30, 2018, Plaintiff was charged with a Rules Violation Report ("RVR") for

10   attempted homicide of a peace officer. At the disciplinary hearing, Plaintiff was found guilty and

11   lost 360 days of good time credit.

12   **III.   DISCUSSION**

13       **A.   Non-exhaustion of Administrative Remedies**

14       Defendants first argue that Plaintiff failed to exhaust administrative remedies available to

15   him. In support, Defendants submit the declarations of B. Hendricks, Grievance Coordinator at

16   Sacramento, (Doc. 52-5); J. Mendez, Correctional Counselor II and Appeals Coordinator at

17   Corcoran, (Doc. 52-9); Howard E. Moseley, Associate Director of the Office of Appeals

18   ("OOA") (Doc. 52-11). Exhibits attached to their declarations include Plaintiff's grievances,

19   CDCR decisions, and search results of Plaintiff's grievance appeals history. (Docs. 52-6, 52-10,

20   52-12.)

21       From the time of the incident on January 29, 2018, to the time Plaintiff filed his FAC on

22   June 18, 2020, Plaintiff submitted four inmate appeals at Sacramento. (SUF ¶ 92.) They were all

23   rejected, cancelled, or forwarded to Corcoran. (SUF ¶ 97.) During the same period, Plaintiff filed

24   eight inmate appeals at Corcoran. (SUF ¶ 98.) Each of these Corcoran appeals were rejected,

25   cancelled or forwarded to the relevant institution. (SUF ¶¶ 99-107.) In 2019, Plaintiff submitted

26   to the OOA two appeals regarding excessive force and suffocation relating to an event on

27   January 29, 2018, but they were both screened out because Plaintiff bypassed the lower levels of

28   review. (SUF ¶¶ 108-11.) The OOA received no other appeals by Plaintiff from January 29,

2018, to February 1, 2022. (SUF ¶ 112.) Plaintiff's inmate appeals history indicates that he did not exhaust administrative remedies for any of the grievances or appeals he filed from the date of the underlying incident on January 29, 2018, and June 18, 2020, the date of filing of the FAC, the operative complaint.

Defendants have met their burden to prove the existence of an available administrative remedy and the failure of Plaintiff to exhaust that remedy. Plaintiff has not opposed the MSJ or demonstrating the unavailability of the remedies. Therefore, Defendants' motion for summary judgment, (Doc. 52), could be granted for non-exhaustion of remedies and the case dismissed without prejudice. However, as set forth below, the Court finds that the undisputed facts and evidence prove Defendants did not violate Plaintiff's Eighth Amendment rights and are entitled to judgment as a matter of law. The Court recommends that the MSJ be granted on this basis.

**B.     Excessive Force**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The "unnecessary and wanton infliction of pain" on prisoners "constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).

A correctional officer engages in excessive force in violation of the Eighth Amendment if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). Thus, "whenever prison officials stand accused of using excessive physical force . . . the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between

1   that need and the amount of force used, the threat reasonably perceived by the responsible

2   officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7.

3        While a correctional officer may not use excessive force, officers may use some measure

4   of force if an inmate refuses a valid order. *Whitley*, 475 U.S. at 320; *LeMarie v. Maass*, 12 F.3d

5   1444, 1451 (9th Cir. 1993). The appropriateness of the use of force is determined by the facts

6   and circumstances of each particular case. *Michenfleder v. Summer*, 860 F.2d 328, 335 (9th Cir.

7   1988).

8        In this instance, the undisputed facts establish that Plaintiff attacked York, Navarro-Diaz,

9   and Baeza using his fists and a sharp weapon; he refused to comply with orders and resisted the

10   COs' efforts to restrain him; the COs used the appropriate amount of force to protect themselves

11   and gain control over Plaintiff; and the COs did not apply force maliciously and sadistically for

12   the purpose of causing harm, but instead made a good-faith effort to maintain institutional safety.

13   Under the circumstances of the case, the force used by York, Navarro-Diaz, Baeza, and Gonzales

14   was reasonable and did not amount to excessive force. Marchese used no force when he placed

15   the leg restraints on Plaintiff, and Vera used no force when he took Plaintiff to the holding cell in

16   the gym. Rivero had no contact with Plaintiff. Vargas and James had no involvement in the

17   incident.

18        These undisputed facts establish that no excessive force was used against Plaintiff, and

19   Defendants are entitled to judgment as a matter of law on Plaintiff's first claim.

20        **C.**    **Failure to Protect**

21        Plaintiff asserts a failure to protect claim against Vargas and Reyes. "[A] prison official

22   can violate a prisoner's Eighth Amendment rights by failing to intervene" in another official's use

23   of excessive force. *Robins v. Meecham*, 60 F.3d 1436, 1441 (9th Cir. 1995). In a "failure-to-

24   protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively,

25   sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's

26   health or safety. *Farmer*, 511 U.S. at 834; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir.

27   2005).

28        Vargas did not witness the incident, and because no excessive force was used, he cannot

be held liable for a failure to protect or intervene.

### D.     Medical Indifference

Plaintiff asserts a medical indifference claim against James. However, the undisputed facts establish James was not involved in the January 29, 2018, incident (SUF ¶¶ 76-77) and, thus, cannot be held liable for medical indifference in this case.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that Defendants' motion for summary judgment (Doc. 47) be GRANTED in whole.

These findings and recommendations will be submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __March 22, 2023__                       _____

UNITED STATES MAGISTRATE JUDGE